FILED
CLERK
8/31/2015 12:57 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
AUDIE J. MATTHEW JR.,

                Plaintiff,

   -against-

**ORDER**
13-CV-5336 (SJF)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
----------------------------------------------------------------X
FEUERSTEIN, J.

    *Pro se* plaintiff Audie Matthew, Jr. ("plaintiff" or "claimant" or "Matthew") commenced this action seeking judicial review of the final determination of defendant Commissioner of Social Security ("Commissioner" or "defendant") denying his November 30, 2009 application for supplemental security income ("SSI"). Now before the Court is defendant's unopposed motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. [Docket Entry No. 11]. For the reasons that follow, defendant's motion is granted.

I.     BACKGROUND

    On November 30, 2009, plaintiff filed an application for SSI, alleging disability due to hearing problems in his left ear and mood disorders [Docket Entry No. 13 Transcript of Administrative Record ("Tr.")), 48, 140-47], which was denied by the Social Security Administration ("SSA") on August 16, 2010 (*id*. at 84-88) and upon reconsideration on February 22, 2011. *Id*. at 93-100. Upon plaintiff's request, a hearing was held before administrative law judge ("ALJ") Philip Moulaison on October 6, 2011, at which plaintiff, who appeared with counsel, and vocational expert John J. Komar ("VE Komar") testified. *Id*. at 44-64. On November 23, 2011, the ALJ issued a decision ("ALJ Decision") (*id*. at 25-43) finding that

1

plaintiff had "not engaged in substantial gainful activity since November 30, 2009, the application date" (*id*. at 30), that plaintiff had a severe impairment of bilateral sensorineural hearing loss (*id*.), that plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of one of the listed impairments (*id*. at 33), that plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can hear at the high end of the speech range in terms of decibels and the claimant requires high loudness in order to differentiate speech" (*id*.), that plaintiff was capable of performing past relevant work (*id.* at 37), and that plaintiff had not been under a disability since November 30, 2009, the date his application was filed.[1]  *Id.*  The ALJ Decision became final on July 25, 2013, when the Appeals Council denied plaintiff's request for review.  *Id*. at 1-5.

II. DISCUSSION

    A. Standards of Review

        1. Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard applied to a Rule 12(c) motion is the same as that applied to a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Bank*

---

[1] While plaintiff alleged disability beginning April 4, 2008 (Tr. 28), the earliest plaintiff is eligible to receive SSI is the month following the month he filed his SSI application.  *See* 20 C.F.R. § 416.335; *Frye ex rel. A.O. v. Astrue,* 485 F. App'x 484, 486 n.1 (2d Cir. 2012) ("The earliest month for which SSI benefits could be paid would be the month following the month Frye filed A.O.'s application."); *Roettinger v. Colvin*, No. 14-civ-1135, 2015 WL 4897525, at *1 (E.D.N.Y. Aug. 14, 2015) ("the earliest month for which the Plaintiff could be paid SSI is…the month following…the date on which the Plaintiff filed her application to the SSA for benefits")).  The ALJ noted that "[a]lthough supplemental security income is not payable prior to the month following the month in which the application was filed (20 C.F.R. 416.335), [he] considered the complete medical history consistent with 20 C.F.R. 416.912(d)." Tr. 28.

of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive such a motion, "a complaint must contain sufficient factual matter…to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). In resolving a motion to dismiss, the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n,* 768 F.3d 183, 191 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1853, 191 L. Ed. 2d 725 (2015) (internal quotation marks and alterations omitted). "Even if a motion for judgment on the pleadings is entirely unopposed, that alone is not grounds for granting it: the Second Circuit has denied that 'a plaintiff's failure to file a motion for judgment on the pleadings or to respond to the Commissioner's Rule 12(c) motion will result in the dismissal of his complaint.'" *Orr v. Comm'r of Soc. Sec.*, No. 13-civ-3967, 2014 WL 4291829, at *4 (S.D.N.Y. Aug. 26, 2014) (citing *Nauss v. Barnhart,* 155 F. App'x 539, 540 (2d Cir. 2005)).

        2.       Review of Determinations by the Commissioner of Social Security

Upon review of the final decision of the Commissioner, a court may enter "judgment affirming, modifying, or reversing the decision…with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A district court must consider whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "[I]t is not the function of the reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and

citation omitted). Although the Commissioner's findings of fact are binding as long as they are supported by substantial evidence, this deferential standard of review is inapplicable to the Commissioner's conclusions of law or application of legal standards. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Rather, courts have a statutory and constitutional duty to ensure that the Commissioner has applied the correct legal standards, regardless of whether the Commissioner's decision is supported by substantial evidence. *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004). If a court finds that the Commissioner has failed to apply the correct legal standards, the court must determine if the "error of law might have affected the disposition of the case." *Id.* at 189. If so, the Commissioner's decision must be reversed. *Id.*; *see also Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the application of the correct legal standard could lead only to the same conclusion, the error is considered harmless and remand is unnecessary. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

      B.        Standards for Determining Eligibility for SSI

"A claimant is entitled to SSI if they are (1) 'disabled' within the meaning of the Act and (2) meet certain income limits." *Roettinger*, 2015 WL 4897525, at *8 (citing 42 U.S.C. § 1382(a)). "An SSI applicant qualifies as "disabled" under the Act if she is unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing 42 U.S.C. § 423(d)(1)(A)). To be eligible for SSI benefits, the applicant's "physical or mental impairment or impairments" must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." *Saxon v. Colvin*, No. 13-civ-

165, 2015 WL 3937206, at *3 (W.D.N.Y. June 26, 2015) (quoting 42 U.S.C. § 1382c(a)(3)(B)). "Pursuant to regulations promulgated under the Act, the Commissioner is required to apply a five-step sequential analysis to determine whether an individual is disabled under Titles II and XVI of the Act." *Hussnatter v. Astrue*, No. 09-civ-3261, 2010 WL 3394088, at *17 (E.D.N.Y. Aug. 20, 2010); *see also* 20 C.F.R. §§ 404.1520, 416.920.

First, the Commissioner must determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b). If the claimant is not engaged in "substantial gainful activity," the Commissioner next considers if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities...." 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c). At the third step, the Commissioner determines whether the claimant's severe impairment "meets or equals one of [the] listings in appendix 1 to subpart P of [20 C.F.R. Part 404 of the Act] and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). If the claimant's impairment meets or equals any of the listings and meets the duration requirement, the Commissioner will find the claimant is disabled. *Id.* When a claimant's impairments fail to meet or equal any of the listings, the Commissioner must assess the claimant's residual functional capacity ("RFC") before proceeding to the fourth and fifth steps of the sequential analysis. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(5), 416.920(e).

The RFC assessment considers whether "[the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. §§ 404.1545(a), 416.945. The RFC is "the most [the claimant] can still do despite [his or her] limitations." *Id.* The RFC assessment must be based on "all of the relevant medical and other evidence" in the case record, including "any

5

statements about what [the claimant] can still do that have been provided by medical sources" and any "descriptions and observations of [the claimant's] limitations from [his or her] impairments, including limitations that result from [his or her symptoms], such as pain, provided by [the claimant] or [other persons]." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). In addition, the Commissioner must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). The regulations provide that:

> [w]hen [a claimant] ha[s] severe impairment(s), but [his or her] symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in [the Listings], [the Commissioner] will consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [his or her] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone…In assessing the total limiting effects of [a claimant's] impairment(s) and any related symptoms, [the Commissioner] will consider all of the medical and nonmedical evidence…

20 C.F.R. §§ 404.1545(e), 416.945(e).

At the fourth step, the Commissioner compares the RFC assessment "with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §§ 404.1520(a)(1)(iv) and (f), 416.9420(a)(1)(iv) and (f). If the claimant can still do his or her past relevant work, the claimant is not disabled. *Id*. If the claimant cannot do his or her past relevant work, the Commissioner proceeds to the fifth and final step of the sequential analysis. At the fifth step, the Commissioner considers the RFC assessment "and [the claimant's] age, education and work experience to see if [the claimant] can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(1)(v) and (g), 416.920(a)(1)(v) and (g). If the claimant can make an adjustment to other work, the claimant is not disabled. *Id*. If the claimant cannot make an adjustment to other

6

work, the claimant is disabled. *Id*. The claimant bears the burden of proving first four (4) steps of the sequential analysis, while the Commissioner bears the burden at the last step. *See Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

In addition to the five-step analysis, additional regulations governing evaluations of the severity of mental impairments require, at the second and third steps, the reviewing authority "to determine first whether the claimant has a medically determinable mental impairment, and if so, to rate the degree of functional limitation resulting from the impairment(s) in four broad function areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation" and provide that "if the degree of limitation in each of the first three areas is rated mild or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not severe and will deny benefits." *Kohler*, 546 F.3d at 266 (citations omitted). "If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder" and "[i]f so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity." *Id.*

    C.    The ALJ Applied the Correct Legal Procedures and the ALJ Decision was Supported by Substantial Evidence

In denying plaintiff's application for SSI, the ALJ applied the correct five-step sequential analysis. Tr. 30-37; *see also Morales v. Colvin*, No. 13-civ-4302, 2014 WL 7336893, at *10 (S.D.N.Y. Dec. 24, 2014). The ALJ's decision is also supported by substantial evidence in the record.

1. Step One

The ALJ's finding at step one that plaintiff had not engaged in substantial gainful activity since the date of his application (Tr. 30) is supported by record evidence including plaintiff's testimony that he last worked in "1999, 2000." *Id*. at 49.

2. Step Two

At step two, the ALJ found that plaintiff had a severe impairment of bilateral sensorineural hearing loss (Tr. 30), a finding that is supported by substantial evidence, including notes from Dr. Maulik Shah, M.D. indicating that "an audiogram show[ed] the patient to have moderate to severe hearing loss bilaterally" and his impression that plaintiff suffered from "[s]ensorineural hearing loss bilaterally." *Id.* at 241. Additionally, the ALJ's findings at step two that plaintiff's obesity, vertigo and depressive disorder were nonsevere impairments (*id*. at 30-33) were also supported by substantial evidence. In finding that plaintiff's obesity was not a severe impairment, the ALJ noted that that plaintiff's "weight, including the impact on his ability to ambulate as well as his other body systems" was "considered within the limitations of the claimant's residual functional capacity" (*id.* at 30), but that there was "no evidence of any specific or quantifiable impact on pulmonary, musculoskleteal, endocrine, or cardiac function." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (the ALJ "is entitled to rely not only on what the record says, but also on what it does not say."). The ALJ's finding that plaintiff's "medically determinable impairment of vertigo [was] nonserve" (Tr. 31) is supported by evidence from: Dr. Eric Katz who, in May 2010, diagnosed plaintiff with "long-standing vertigo and tinnitus after an industrial accident" (Tr. 346) but found that "[a]s for his dizziness and tinnitus, [plaintiff] started on meclizine, he [had] a recent CT scan of the head per his report 6 months ago that was negative, nonfocal neuro exam, and his symptoms [were] stable" (*id.*); evidence from Dr. Shannon Skinner of Maricopa Integrated Health System who noted that

8

plaintiff's dizziness was "controlled with meclizine" (*id.* at 371); and evidence from Deirdre Mountjoy, RN MS FNP, a nurse in the practice that treated plaintiff, noting that while plaintiff "continues to suffer with associated symptoms of vertigo, for which he is taking Meclizine 25mg 3 times a day," plaintiff's Meclizine medication was "effective." *Id.* at 482.

In finding that plaintiff's "medically determinable mental impairment of depressive disorder, not otherwise specified [did] not limit the claimant's activity to perform basic mental work activities and [was] therefore nonsevere" (*id.* at 31), the ALJ applied the "special technique" for evaluations of the severity of mental impairments. *Kohler*, 546 F.3d at 265 (citations omitted). After finding that plaintiff had a "medically determinable mental impairment of depressive disorder" (Tr. 31), the ALJ proceeded to "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," §404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Kohler*, 546 F.3d at 266 (citing 20 C.F.R. § 404.1520a(c)(3)). After finding the plaintiff's "medically determinable mental impairments cause mild restriction in activities of daily living, mild difficulties in social functioning, and mild difficulties with regard to concentration, persistence or pace, and have resulted in no episodes of decompensation of extended duration" (Tr. 32), the ALJ properly found that "plaintiff's medically determinable mental impairment [was] nonsevere." Tr. (citing 20 C.F.R. § 416.920a(d)(1)); *see also Kohler*, 546 F.3d at 266 ("if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits") (citing § 404.1520a(d)(1)). The ALJ's determination that plaintiff's mental impairment was nonsevere is supported by substantial

evidence in the record including normal mental status examinations by treating sources (Tr. 351-64, 387-419) as well as the opinions of state consultative examiners. *Id.* at 253-61, 283-93.

        3.      Step Three

At step three, the ALJ considered plaintiff's impairment "under listing 2.10." Tr. 33. In order to meet Listing 2.10, an individual with hearing loss not treated with cochlear implantation must show either (A) "[a]n average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear," or (B) "[a] word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words." 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.10. The ALJ's finding at step three that plaintiff's severe impairment did not "meet or medically equal[] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926)" was adequately supported by evidence from Dr. Garcia, a medical consultant, that plaintiff's hearing limitation was "[n]ot listing level" (Tr. 298) and the fact that "[n]o treating or examining physician … recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." *Id.* at 33; *see also Perry v. Astrue*, No. 3:10-civ-01248, 2011 WL 5006505, at *20 (S.D.W. Va. Oct. 20, 2011) ("Claimant has failed to present evidence to support a finding that Claimant's average air conduction hearing score exceeded the threshold score or word recognition score and, therefore, Claimant has not satisfied Listing 2.10.").

        4.      RFC Assessment

At step four, the ALJ determined that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: the claimant can hear at the high end of the speech range in terms of decibels and the

10

claimant requires high loudness in order to differentiate speech. Tr. 33. In reaching this conclusion, the ALJ gave significant weight to the opinions of the state agency medical consultants who found that plaintiff could perform a range of work that did not require excellent hearing. *Id*. at 80-81, 294-98.[2] These opinions were consistent with the objective medical evidence including the MRI scan of plaintiff's head showing no internal auditory canal pathology and no occlusive neuroma (*id*. at 241-42) and with test results indicating that plaintiff had a speech reception threshold of eighty (80) decibels on the left side and sixty (60) decibels on the right side and that plaintiff was able to discriminate words at eighty (80) percent at one hundred (100) decibels of the right ear and thirty-six (36) percent at one hundred and five (105) decibels on the left ear. *Id.* at 248. Medical records from plaintiff's treating physicians also supported the ALJ's RFC assessment: Dr. Shah noted that plaintiff had "moderate to severe hearing loss bilaterally" (*id*. at 241) but that an MRI "showed no internal auditory canal pathology and no occlusive neuroma" (*id*.) and that plaintiff's complaint of dizziness did "not seem to be otologic in cause." *Id.*

In accordance with the "treating physician's rule,"[3] the ALJ considered the opinion of one of plaintiff's treating physicians, Dr. Elk, that plaintiff had a medically determinable physical or mental impairment that prevented him from engaging in substantial gainful activity (Tr. 486) but gave it little weight because it was "brief, conclusory, and inadequately supported by clinical findings." *Id.* at 36. The ALJ properly accorded Dr. Elk's opinion little weight

---

[2] The state agency medical consultants also indicated that plaintiff should avoid concentrated exposure to hazards like heights or where "transient alteration in conscious or dizziness would be dangerous to claimant and/or others." Tr. 297.

[3] The treating physician's rule "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

11

because Dr. Elk's opinion that plaintiff was disabled is "not considered a 'medical opinion' under the treating physician's rule to which controlling weight should be assigned because it represents an opinion on an issue reserved to the Commissioner" (*Earl-Buck v. Barnhart*, 414 F. Supp. 2d 288, 293 (W.D.N.Y. 2006); *see also Pope v. Barnhart*, 57 F. App'x 897, 899 (2d Cir. 2003); 20 C.F.R. § 404.1527(d)), and because it was inconsistent with the objective medical evidence, including the hearing examinations and MRI results, and mild mental status examination findings. *See Sizer v. Colvin*, 592 F. App'x 46, 47 (2d Cir. 2015) ("ALJ properly accorded little weight to the non-specialist medical opinion of Appellant's treating physician because it was inconsistent with other substantial evidence in the case record and, therefore, undeserving of controlling weight.") (citations and quotation marks omitted); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence") (internal citations omitted). The ALJ also properly considered the opinion of plaintiff's treating nurse, Deirdre Mountjoy, but accorded her opinion no weight because she was not an acceptable medical source[4] (Tr. 36) and because her statements were not supported by the clinical or diagnostic medical evidence in the record. *Id*. at 37.

The ALJ's assessment, as part of his RFC determination, that plaintiff suffered from no physical limitations other than the one nonexertional limitation as to his hearing, and no mental limitations, was supported by substantial evidence including: normal physical examination findings (*id.* at 264-65, 345-46, 371, 477, 479-81); notes from Dr. Skinner indicating she refused

---

[4] "Acceptable medical sources are defined as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologist, but nurse practitioners and physician assistants are not included among the acceptable medical sources." *Fax v. Comm'r of Soc. Sec.*, No. 14-civ-00530, 2015 WL 3889621, at *4 (N.D.N.Y. June 24, 2015); *see also Genier v. Astrue*, 298 Fed. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and (d)(1)).

to complete plaintiff's disability forms because she had "no reason to label him as permanently disabled" (*id.* at 371-72) and she "would not be able to justify a permanent and total disability on medical grounds" (*id.* at 371); normal neurological examinations (*id.* at 241, 346); normal mental status examination (*id.* at 351-64, 387-419); and the opinions of state consultative examiners that plaintiff did not have a severe mental impairment (*id.* at 253-61, 283-93) or any exertional limitations. *Id.* at 80, 295; *see also Pena v. Comm'r of Soc. Sec.*, No. 13-civ-7912, 2015 WL 4646765, at *6 (S.D.N.Y. Aug. 4, 2015) (finding ALJ properly assessed plaintiff's RFC "to perform a [full] range of work at all exertional levels" because "[plaintiff's] physical examinations resulted in normal findings" and "[plaintiff's] examining physicians did not order any diagnostic tests to confirm the presence of any neurological disorder").

In assessing plaintiff's RFC, the ALJ conducted a proper credibility analysis (Tr. 33-35), analyzing plaintiff's testimony concerning his impairments and limitations, including his alleged deafness, ringing sounds in his ears, dizziness, urinary tract infection, shortness of breath, right shoulder pain, and depression (*id.* at 34), and finding that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible" (*id.*) because plaintiff's testimony was "inconsistent with objective medical evidence" (*id.* at 35) and with his activities of daily living. *Id.* at 34; *see also Burnette v. Colvin*, 564 F. App'x 605, 609 (2d Cir. 2014) ("the ALJ acted well within his discretion in concluding that [plaintiff] was less than credible" where "ALJ found inconsistencies between [plaintiff's] statements and the evidence"); *Donnelly v. Colvin*, No. 13-civ-7244, 2015 WL 1499227, at *15 (S.D.N.Y. Mar. 31, 2015) (finding ALJ properly evaluated plaintiff's credibility by "rel[ying] on objective, medical records and [finding] that some of [plaintiff's] statements were contradicted by medical records" and "then inferr[ing] those comments were not

13

credible" and analyzing plaintiff's statements of activities of daily living). The ALJ also properly "diminishe[d] the claimant's credibility because substantial evidence in the record show[ed] that claimant failed to comply with prescribed medications." Tr. 35. *See Seabrook v. Astrue*, No. 11-civ-5642, 2013 WL 163979, at *13 (S.D.N.Y. Jan. 10, 2013), *report and recommendation adopted*, No. 11-civ-5642, 2013 WL 1340134 (S.D.N.Y. Mar. 26, 2013) ("One factor that may impact the claimant's credibility is a showing that the claimant is not following the treatment as prescribed and no good reason exists for that failure."); 20 C.F.R. § 416.930; Social Security Ruling ("SSR") 96-7p. The ALJ's assessment of plaintiff's RFC is devoid of legal error and supported by substantial evidence.

5. Step Four

At step four, the ALJ, relying on "claimant's documented vocational background, the claimant's testimony, and the testimony of the vocational expert" (Tr. 37), found that plaintiff was capable of performing his past relevant work as a teacher aide and cook helper as generally performed pursuant to the DOT[5] and as actually performed by the claimant. Tr. 37. "[At] the fourth stage of the [SSA] inquiry, the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis in original). "In determining whether a claimant can perform his or her past relevant work as generally performed, '[t]he inquiry…is not whether a claimant is able to perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her previous 'type' of work.'" *Fiedler v. Colvin*, 54

---

[5] The Dictionary of Occupational Titles ("DOT") is "an official publication of the Department of Labor [and] [i]t is what the SSA uses to evaluate jobs as they are generally performed in the national economy." *Albano v. Colvin*, No. 14-civ-3650, 2015 WL 1782339, at *10 n.1 (E.D.N.Y. Apr. 16, 2015). (internal quotation marks and citations omitted).

14

F.Supp.3d 205, 216 (E.D.N.Y. 2014) (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

Here, the ALJ determined, *inter alia*, that plaintiff was capable of performing past relevant work as a cook helper, DOT 317.687-010,[6] as generally performed. Tr. 37. According to the DOT, "a cook helper washes, peels, and cuts vegetables and fruits, and cleans, cuts, and grinds meats, poultry, and seafood [and]…also helps prepare and measure food items and ingredients, and stores foods in designated areas." *Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011); *see* DICOT 317.687-010. The ALJ's finding that plaintiff could perform his past work as a cook helper as generally performed pursuant to the DOT (*id*. at 37) is supported by substantial evidence in the form of VE Komar's testimony that someone with similar impairments as plaintiff could work as a cook helper provided the position did not include working with diners and taking orders (*id.* at 62), which demonstrates that plaintiff was "able to perform the duties associated with [his] previous 'type' of work." *Halloran*, 362 F.3d at 33 (citation omitted). While plaintiff's specific past work as a cook helper may have included "taking orders from residents" (*id*. at 190), "[t]hat plaintiff may be unable to perform [his] specific past work because that job required [taking orders] does not mean Plaintiff cannot perform the job of [cook helper] generally. The ALJ needed only to determine Plaintiff could perform [his] past work generally to find that [he] was not disabled." *Albano*, 2015 WL

---

[6] According to DOT 317.687-010, a cook helper: "assists workers engaged in preparing foods for hotels, restaurants, or ready-to-serve packages by performing any combination of following duties: washes, peels, cuts, and seeds vegetables and fruits; cleans, cuts, and grinds meats, poultry, and seafood; dips food items in crumbs, flour, and batter to bread them; stirs and strains soups and sauces; weighs and measures designated ingredients; carries pans, kettles, and trays of food to and from work stations, stove, and refrigerator; stores foods in designated areas, utilizing knowledge of temperature requirements and food spoilage; cleans work areas, equipment and utensils; segregates and removes garbage, and steam-cleans or hoses garbage containers; distributes supplies, utensils, and portable equipment, using handtruck."

1782339, at *9; *see also Fiedler*, 54 F. Supp. 3d at 216-17; *Grogg v. Comm'r of Soc. Sec.*, No. 5:11-civ-1381, 2014 WL 1312325, at *13 (N.D.N.Y. Mar. 31, 2014). Therefore, while the ALJ's finding that plaintiff was capable of performing his past relevant work as a teacher aide and as a cook helper as actually performed (Tr. 37) is not supported by substantial evidence,[7] because "the ALJ did not err in finding that Plaintiff had the RFC to perform [his] past relevant work as a [cook helper] as it is normally performed in the national economy, the ALJ's error in finding [he] could perform [his] past work as [he] had actually performed it is harmless error." *Hayes v. Colvin*, No. 11-civ-0835, 2014 WL 2168082, at *8 (W.D.N.Y. May 23, 2014); s*ee generally NLRB v. American Geri–Care, Inc.*, 697 F.2d 56, 64 (2d Cir. 1982). Therefore, the "ALJ's finding that the Plaintiff could perform [his] past relevant work as a [cook helper] as generally performed was sufficient to negate a finding of disability at step four." *Fiedler*, 54 F. Supp. 3d at 217 (citing *Grogg*, 2014 WL 1312325, at *13).

III. CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is granted and the Commissioner's decision denying plaintiff's application for SSI is affirmed. The Clerk of the Court shall close this case. **SO ORDERED**.

s/ Sandra J. Feuerstein<br>
Sandra J. Feuerstein<br>
United States District Judge

Dated: August 31, 2015
      Central Islip, New York

---

[7] The ALJ's finding that plaintiff was capable of performing his past relevant work as a teacher aid is not supported by substantial evidence because VE Komar testified that someone with plaintiff's hearing impairments "could not work as a teacher aide." *Id*. at 61-62. The ALJ's finding that plaintiff was capable of his past relevant work as a cook helper as actually performed by plaintiff is not supported by substantial evidence because plaintiff's work as a cook helper included taking orders from residents (Tr. 190) and VE Komar testified that a person with similar impairments as plaintiff could work as a cook helper generally but would not be able to perform a job that entailed "taking orders." *Id*. at 62.

16